IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| LAURALEI CALLIHAN | § |
| | § |
| v. | §  CIVIL ACTION NO: 2:12-cv-54 |
| | §  JURY TRIAL |
| NUECES COUNTY, TEXAS; and | § |
| DONALD HATCH, *Individually* | § |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

**NOW COMES** Plaintiff, Lauralei Callihan, filing this, her *Plaintiff's Original Complaint*, and bringing this action against Nueces County, Texas, and Donald Hatch, *Individually,* as said Defendants have denied Plaintiff's rights guaranteed by the Constitution and laws of the United States of America and/or the State of Texas.

**JURISDICTION AND VENUE**

1.  This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(3) (civil rights). This court also has supplemental jurisdiction pursuant to 28 U.S.C.S. § 1367 to hear the state claims that will be set forth in this complaint. Venue is proper in the Southern District of Texas, Corpus Christi Division, as this is the district where the claim arose in accordance to 29 U.S.C.§ 1391(b).

**PARTIES**

2.  Plaintiff Lauralei Callihan brings this suit on her own behalf and is a resident of Corpus Christi, Texas.

3. Defendant Nueces County, Texas, (hereinafter "Defendant NUECES COUNTY"), is a political subdivision of the State of Texas, and can be served with summons upon NUECES COUNTY, Texas, Nueces County Judge Lloyd Neal, 901 Leopard Street, Corpus Christi, Texas 78401.

4. Defendant Donald Hatch (hereinafter "Hatch") was, at all times material to this suit, an officer employed by the NUECES COUNTY SHERIFF'S DEPARTMENT. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the NUECES COUNTY SHERIFF'S DEPARTMENT. Defendant Hatch can be served with summons at his place of employment, NUECES COUNTY SHERIFF'S DEPARTMENT, 901 Leopold St., Corpus Christi, Texas 78401.

## FACTS

5. Whenever, in this complaint it is alleged that any Defendant did any act, thing, and/or omission, it is meant that Defendant and/or Defendant's officers, agents, servants, employees or representatives did such act, thing and/or omission and that at the time it was done with full authorization and/or ratification of Defendant or done in the normal and routine course and scope of employment of Defendant and/or Defendant's officers, agents, servants, employees or representatives.

6. At approximately 1:00 a.m. on the morning September 16, 2010, Plaintiff was a passenger in a blue 2006 Dodge Durango which was being driven by her husband, Michael Callihan (hereinafter "Mr. Callihan"). Plaintiff and her husband were on their way home from a friend's house when Mr. Callihan noticed that the same car had been behind them for some time and decided to make several turns in an effort to see if the car was actually following them or not. Because the vehicle following them was not any type of law enforcement vehicle, Plaintiff and Mr. Callihan

became alarmed when the vehicle continued to follow them. When Mr. Callihan stopped for a stop sign he decided to exit his vehicle to find out who was in the vehicle following them, Mr. Callihan learned that an off-duty officer was the driver of the vehicle that was following him and Plaintiff. The officer told Mr. Callihan that he was drunk because he had made so many turns and he also informed Mr. Callihan that he had called the police and they were on their way. Mr. Callihan did not believe he was doing anything wrong and the officer did not inform him he was under arrest, so he got back in his vehicle and left without incident. Within a short time, two vehicles showed up with three NUECES COUNTY SHERIFF'S DEPARTMENT deputies in them. Mr. Callihan got out of his vehicle and Plaintiff Lauralei Callihan remained in the vehicle. Ms. Callihan heard the Defendant inform her husband they were going to arrest him for DWI. Ms. Callihan became frightened and concerned and she got out of her vehicle and asked the Officer speaking with her husband if she could just drive her husband home. Defendant Hatch came over to the car and Ms. Callihan then asked Defendant Hatch if she could drive her husband home. Defendant Hatch informed her that her husband was being arrested for DWI. Plaintiff then asked Defendant Hatch if she could just talk to her husband and tell him she would call her father or if he, Defendant Hatch, could give that information to Mr. Callihan for her. Defendant Hatch told her she could give her husband that information when he called her from jail. Becoming more concerned, Ms. Callihan called out to her husband, telling him she would call her father as she knew her husband was frightened. Defendant Hatch then told Ms. Callihan to get back in her vehicle. Ms. Callihan again asked if she could just drive her husband home. At that time, Defendant Hatch did an HGN test on Ms. Callihan's eyes and informed her she would be able to drive and could drive her vehicle home but could not drive her husband home. Ms. Callihan requested that Defendant Hatch allow her to look for her cell phone

3

as it was dark and hard to see. Defendant Hatch said she could and pointed out her cell phone on the floor board. Ms. Callihan picked up the cell phone and, while she was scrolling down the phone book, she told Defendant Hatch she was just going to call her father. Defendant Hatch got very angry all of the sudden and replied "you know what? That's it." Defendant Hatch apparently decided it would be fun to rough Ms. Callihan up a bit since she had angered him. Defendant Hatch grabbed Ms. Callihan's left arm and flipped her around to face her vehicle. Ms. Callihan's right elbow hit the side of the vehicle very hard, as did her legs. Defendant Hatch then pulled Ms. Callihan's arms up against her back and handcuffed her very tightly. At this point, Ms. Callihan started screaming because Defendant Hatch was not only hurting her, but causing her to fear what this maniac was going to do. Ms. Callihan asked Defendant Hatch what he was doing. Defendant Hatch told Ms. Callihan he was arresting her for resisting arrest. Ms Callihan asked Defendant Hatch how and why he would do that as she had neither been placed under arrest or informed that she was under arrest. Defendant Hatch then added "oh and for public intoxication." The excessive force used by Defendant Hatch caused bruising on multiple areas of Ms. Callihan's body and severe swelling of her right elbow and her hands and wrists. After being placed in jail, Ms. Callihan requested to see the nurse, however they refused to provide her with the medical attention she needed. Neither Ms. Callihan nor her husband had ever been arrested prior to this incident. The cause of action for interfering with arrest brought against Ms. Callihan was dismissed and the cause of action for public intoxication was tried before a jury. On this charge, Ms. Callihan was found not guilty.

7.      Ms. Callihan was illegally detained, and arrested (without reasonable suspicion and/or probable cause to believe that a crime had been committed by her) by Defendants.

8. Ms. Callihan is informed and believes, and thereupon alleges that in committing said acts and/or omissions, each Defendant was the agent and employee of each other Defendant and was acting within such agency and employment and that each Defendant was acting under color of state law.

9. Furthermore, said excessive force committed against Ma. Callihan by Defendant Hatch was not performed in good faith manner to maintain or restore discipline, but was committed maliciously, intentionally, and sadistically for the very purpose of punishing and causing injury to Ms. Callihan.

10. At all pertinent times, Defendants Nueces County and/or NUECES COUNTY SHERIFF'S DEPARTMENT authorized and/or ratified the wrongful and tortious acts and/or omissions described herein.

## FIRST CLAIM FOR RELIEF - - §1983

11. The allegations contained in Paragraphs 5 thru 10 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

12. The Civil Rights of 1871, now codified as 42 U.S.C.S. §1983 as federal law provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C.S. §1983.

13. The state action requirement for standing under 42 U.S.C.S. §1983 has more commonly been referred to as "color of state law," from the statute itself.  Plaintiff is informed and believes, and thereupon alleges that, in committing said acts and/or omissions, each Defendant was the agent and

employee of each other Defendant and was acting within such agency and employment and that each Defendant was acting under color of state law.

14.     42 U.S.C.S. §1983 requires that the conduct complained of must have deprived the person of some privilege or immunity secured by the Constitution or laws of the United States.  As such, Plaintiff alleges that Defendants, jointly and/or severally deprived her of her Fourth Amendment rights and those rights, privileges, and immunities secured by the Fifth, Eighth and/or First Amendments to the Constitution incorporated and applied to the states through the Fourteenth Amendment.  Defendants violated this provision by the following actions and/or omissions, *inter alia*:

> a)  by attempting to detain Ms. Callihan in violation of her Fourth Amendment expectation of privacy and guarantee to security from unreasonable search and seizure without reasonable suspicion and/or probable cause;
>
> b)  by using excessive force and/or deadly force in the course of Defendants' attempted custody of Ms. Callihan, in violation of the Fourth Amendment and its "reasonableness" standard.  Plaintiff therefore pleads that she was unlawfully subjected to excessive force. Said actions resulted directly and only from the use of force that was clearly excessive to the need, and the excessiveness of which was objectively unreasonable; and
>
> c)  by retaliating against Plaintiff for merely expressing her opinions in violation of her right to free speech.

15.     Defendants' actions and/or omissions were not "objectively unreasonable" in light of the facts and circumstances confronting them without regard to their underlying intent or motivation. Clearly, careful attention to the facts and circumstances of this particular case demonstrates the unreasonableness of Defendants' actions.  In light of the fact that Ms. Callihan was merely a passenger in the vehicle and not the driver, and only moments prior to placing the handcuffs on Ms. Callihan and arresting her, Defendant Hatch had performed an HGN test on Ms. Callihan and told

6

her that he was going to allow her to drive her vehicle home, it is initially absurd that Defendant Hatch would deem force was warranted and/or required. Furthermore, Ms. Callihan never posed an immediate threat to the safety of Defendant Hatch or anyone else. For these and other reasons, it was objectively unreasonable for Defendant Hatch to use excessive force upon Ms. Callihan.

16.   Under §1983, Defendant Nueces County is also liable for failing to supervise and/or failing to train, and/or acquiescence in unconstitutional behavior by subordinates. First, said Defendant failed to properly train and failed to properly supervise their officers. Said Defendant is liable under §1983, as there is a causal connection between his actions and/or omissions and the alleged constitutional violations, as outlined throughout this entire pleading. In fact, said Defendant did not sanction Defendant Hatch's conduct and did not punish him accordingly, thereby sanctioning his actions, amounting to a departmental policy that violated Plaintiff's civil rights. Said Defendant's failure to supervise or train amounted to gross negligence or deliberate indifference.

17.   It is also well-established that municipalities are liable under 42 U.S.C.S. §1983 for constitutional torts that are in compliance with their customs, practices, policies or procedures. A municipality is liable for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the body's official decision making channels. In this case, Defendant Nueces County is liable because they sanctioned the custom, practice and/or policy or procedures of, *inter alia*, 1) using excessive, and oftentimes deadly force, to effectuate what are otherwise routine arrests, 2) ignoring the serious need for training and supervision of their officers in regards to the use of force, 3) failing to discipline those persons whom are found to have engaged in the use of excessive force upon those entrusted to their care and/or under their control, 4) failing to adequately supervise and/or observe their employees and/or officers

including reservist, 5) failing to provide adequate training in regard to the availability of alternative means of detaining persons apart from the use of force and/or deadly force, and 6) failing to impose proper and sufficient policies and/or procedures as to the use of force and/or the treatment of the mentally ill; 7) ignoring the serious medical needs of those entrusted to their care based either on expedience or ignorance to the consequences, and 8) failing to discipline those persons whom are found to have ignored the medical needs of such individuals. Such policy and/or customs were the "moving force" behind the constitutional violation (excessive force) exacted upon Lauralei Callihan and was the "cause in fact" of her injuries.

18.     The actions and/or inaction taken in this case was uncalled for and taken pursuant to the customary practices and/or policies or procedures that were sanctioned by all named entity Defendants. Liability for Defendants Nueces County are established under §1983 because the "turn a blind eye" approach to the use of excessive force (in more particular, deadly force) is a persistent, widespread practice of the city employees -- namely police officers -- that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official policy. Defendant Nueces County had actual or constructive knowledge of each practice, custom, and/or policy or procedure and numerous prior incidents of such conduct and/or inaction as to establish accession to that custom by the policy makers. Defendant Nueces County unspoken policies above is a decision that reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory rights will follow the decision. In the alternative, Defendant Nueces County is liable under §1983 for failing to adopt clear policies outlining the criteria for determining the need for, the availability of and/or the means by which to use force and more importantly, the abilities of reservists.

19. Moreover, Defendant Nueces County is liable for the inadequate training of their officers under §1983. Liability attaches to Defendant Nueces County because their failure to train amounts to deliberate indifference to the rights of the persons with whom they come in contact.

20. Plaintiff further alleges that Defendants, jointly and/or severally have violated her Fourth Amendment rights when she was unreasonably and unlawfully detained.

21. **§ 1983 - Qualified Good Faith Immunity**. Qualified good faith immunity stands for the proposition that even though the civil rights of a complainant may have been violated, if the officer engaged in the conduct in good faith there is no liability for that individual. The standard by which an officer's entitlement to good faith qualified immunity is objective not subjective. The determination of objective reasonableness must be based on a version of the facts most favorable to the Plaintiff. To the extent that credibility or fact questions exist, a fact-finder continues to be necessary. In the instant case, Ms. Callihan alleges that Defendant Hatch is not entitled to claim "qualified good faith immunity." Importantly, Defendant Hatch never had a good faith belief in his conduct because he acted in a manner demonstrating that he was plainly incompetent and knowingly violated Ms. Callihan's civil rights. When the pleadings (and/or facts) are taken in the light most favorable to the Plaintiff, it is clear that Ms. Callihan was frightened and only wished to use her cell phone to call her father for help and that at no time did she brandish a weapon and/or give Defendant Hatch cause for alarm. Any reason given by Defendant Hatch for his unlawful actions does not warrant the application of qualified good faith immunity because Defendant Hatch was never in danger nor was any other persons in the vicinity in danger.

**SECOND CLAIM FOR RELIEF**
**Texas - - Assault & Battery**

22.     The allegations contained in Paragraphs 5 thru 10 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading. Furthermore, the claims brought by Plaintiff under this section only apply to the individual Defendant Hatch.  Any reference to "Defendant" in this section only applies to the aforementioned Defendant and does not include Defendant County.

23.     As a pendent state cause of action, at all times material and relevant herein, Defendant Hatch, by acts and/or omissions and under color of state law did then and there by acts/and/or omissions, intentionally, knowingly and/or recklessly cause severe personal injury to Ms. Callihan through unconsented physical contact with her.

24.     Under Texas law, the cause of action for excessive force is simply one for assault and battery. Consequently, Plaintiff alleges that Defendant Hatch committed an assault upon her when he intentionally, knowingly, and/or recklessly physically assaulted her.  Said assaultive conduct of Defendant Hatch was committed intentionally, knowingly, and/or recklessly and was the proximate cause of physical and emotional injuries to Ms. Callihan.  Said injuries were the direct and immediate consequence of Defendant Hatch's wrongful acts and a natural and direct result of the assault.

25.     At no time was Defendant Hatch privileged to take the action, as force was not necessary. Moreover, Defendant Hatch's assault and battery of Ms. Callihan was not objectively reasonable when balancing the amount of force used against the need for the force.

**DAMAGES**

26.     As a result of the foregoing unlawful and wrongful acts of Defendants, jointly and severally, Plaintiff has been caused to suffer general damages which include, but are not limited to, the following: both physical and emotional injury, pain and suffering, and emotional and mental distress, and shock.

27.     Pursuant to the Civil Rights Attorney's Fees Award Act, 42 U.S.C.S. §1988, a prevailing party in a §1983 case is entitled to recover its attorney's fees.  Hence, Plaintiff prays for all costs and attorney fees associated with bringing the present case to trial.

28.     In addition, Plaintiff prays for punitive damages against Defendant Hatch.  Punitive damages are designed to punish and deter persons such as Defendant Hatch who have engaged in egregious wrongdoing.  Punitive damages may be assessed under §1983 when the a Defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays that upon trial upon the merits, Plaintiff recovers compensatory damages against Defendants, jointly and severally; that Plaintiff also recovers punitive damages against Defendant Hatch  in an amount to punish and/or deter and to make an example of those Defendants in order to prevent similar future conduct; and that Plaintiff recovers against each Defendant all reasonable and necessary attorney's fees, court costs and expenses in regards to the present suit in litigation.  Moreover, Plaintiff prays for all prejudgment and postjudgment interest that can be assessed against the Defendants in the event of recovery; and that Plaintiff recovers against each Defendant any and all other general or specific relief to which she prove herself justly entitled.

        Respectfully submitted,

        GALE, WILSON & SÁNCHEZ, PLLC
        115 E. Travis, 19th Floor
        San Antonio, Texas 78205
        Telephone: (210)222-8899
        Telecopier: (210)222-9526
        E-Mail: cjgale@gws-law.com


        By: /s/ Christopher J. Gale
            Christopher J. Gale
            Southern District Bar No. 27257
            Texas Bar Number 00793766
        *Attorney-in-Charge for Plaintiff*

### **Demand for Jury Trial**

Plaintiff hereby demands trial by jury pursuant to Fed.R.Civ.P. 8(b).